FILED

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

2014 MAR -7  A 9: 22

CLERK US DISTRICT COURT
ALEXANDRIA. VIRGINIA

GARY MARLAND                        :
3113 Cobb Hill Lane                 :
Oakton, VA, 22124                   :
                                    :
         Plaintiff,                 :
                                    :
    v.                              :        Case No. 1:14cv238 AJT/JFA
                                    :        **JURY TRIAL DEMANDED**
GIANT FOOD STORES, LLC.             :
3131 Duke Street                    :
Alexandria, VA, 22314               :
                                    :
AND                                 :
                                    :
GIANT OF MARYLAND, LLC.             :
Principle Office                    :
6300 Sheriff Road                   :
Landover, MD, 20785                 :
                                    :
AND                                 :
                                    :
AHOLD U.S.A., INC.                  :
Principle Office                    :
1385 Hancock Street                 :
ATTN: Legal Department              :
Quincy, MA 02169                    :
                                    :
         Defendants.                :
                                    :
_Serve on Resident Agent:_          :
Corporation Service Company         :
Bank of America Center, 16th Floor  :
1111 East Main Street               :
Richmond, VA, 23219                 :
                                    :
................................................:

1

## COMPLAINT

The Plaintiff, **GARY MARLAND**, (hereinafter, at times, "Plaintiff" or "Mr. Marland"), by and through his counsel, **David E. Schreiber, Esq.**, and **Lisa Marie Riggins, Esq.** files this Complaint against the Defendants, **GIANT FOOD STORES, LLC., GIANT OF MARYLAND, LLC.,** and **AHOLD U.S.A., INC.,** (hereinafter, at times, "Defendants," "Giant," or the "company") and states to the Court the following:

## PRELIMINARY STATEMENT

1.  The Plaintiff, Gary Marland, brings this civil rights action to seek damages for personal and pecuniary injuries sustained as a result of the discrimination and retaliatory acts he suffered in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §623(a).

2.  The Defendants, Giant Food Stores, LLC., Giant of Maryland, LLC., a foreign limited liability company, doing business in Virginia, and a subsidiary of Defendant, Ahold U.S.A., Inc., harassed and discriminated against Mr. Marland because of his age. The Defendants' actions also created a hostile work environment and eventually resulted in Mr. Marland's unlawful termination.

3. Accordingly, Mr. Marland seeks back pay, front pay, compensatory and liquidated damages, and an award of attorneys' fees and costs, pursuant to the ADEA, and other relief as the Court may deem equitable and just.

## COMPLIANCE WITH ADMINISTRATIVE REMEDIES

4.  Mr. Marland filed a timely charge of discrimination with the Virginia Division of Human Rights ("VA DHR") on or about May 4, 2012.  Pursuant to a workshare agreement

between the VA DHR and the Equal Employment Opportunity Commission ("EEOC"), the claim was considered dually filed with the EEOC.   Mr. Marland submitted a revised complaint to the EEOC on or about September 4, 2012.  The EEOC contacted the VA DHR to request the case file be transmitted to the EEOC Washington Field Office ("WFO").  The EEOC WFO subsequently transferred the case file to the Alexandria Office of Human Rights on April 11, 2013, which released its opinion on or about July 9, 2013.  Mr. Marland requested a substantial weight review on or about July 23, 2013.  Mr. Marland received a right to sue letter from the EEOC, dated December 11, 2013, on December 13, 2013.  The filing of this complaint has occurred within 90 days of the date of receipt of said right to sue letter.  A copy of the letter notice of the right to sue is attached as Exhibit A.

## JURISDICTION AND VENUE

5.  The United States District Court for the Eastern District of Virginia may exercise original subject-matter jurisdiction over this case pursuant to 28 U.S.C. §1331, 28 U.S.C. 1343(a)(4), and 42 U.S.C. §2000e-5(f)(3) because this matter arises under the laws of the United States and seeks redress for violations of Plaintiff's civil rights.  This Court can award back pay, front pay, as well as liquidated and compensatory damages, pursuant to 29 U.S.C. §216 (b) and §626 and reasonable attorney's fees and costs pursuant to 42 U.S.C. §2000e-5(f), (g), (k) and Rule 54 of the Federal Rules of Civil Procedure as well as 29 U.S.C. §216 (b) and §626.

6.  Venue is governed by 42 U.S.C. 2000e-5(f)(3).   Venue in this Court is appropriate because the unlawful employment action occurred in this judicial district.  It is also proper under 28 U.S.C. §1391(b)(2) because this is the judicial district where a substantial part of the events, which gave raise to the claim, occurred.

3

## PARTIES

7. The Plaintiff, Gary Marland, is an adult male residing in Oakton, Virginia. The Plaintiff, at all relevant times herein, was an employee of Giant Food Stores, LLC, also known as Giant of Maryland, LLC. Mr. Marland was born on November 8, 1952. He is currently 61 years old.

8. The Defendant, Giant Food Stores, LLC., also known as Giant of Maryland, LLC., is a subsidiary of the Defendant, Ahold U.S.A., Inc.

9. The Defendants are persons within the meaning of 42 U.S.C. §2000e(a), and employers within the meaning of 42 U.S.C. §2000e(b).

## STATEMENT OF FACTS

10. Mr. Marland has had a long, accomplished career as a supermarket manager. He began working for Safeway Stores in or about July, 1968 as a clerk and gradually climbed the ranks to be a store manager. He moved from Safeway to Magruder's in 1988 where he continued to work as a store manager. He later moved to Shoppers Food where he worked as a store manager until in or about May, 2005.

11. On or about June 6, 2005, Mr. Marland began working for Giant, a subsidiary of Ahold U.S.A., Inc. Mr. Marland excelled at his work at each store he managed in the Northern Virginia region, including Store #795 located at 7501 Huntman Square, Springfield, Virginia, 22153, Store #780 located at 3480 S. Jefferson Street, Falls Church, Virginia, 22041, and most recently Store #261 located at 3131 Duke Street, Alexandria, Virginia, 22314.

12. From the beginning of his employment with Giant, Mr. Marland received several

commendations. In 2006, his former District Manager, Jim Terry, rated Mr. Marland as a "fully competent" store manager. That same year, Mr. Marland's store (#780) received distinction for being the "Top Performer With The Highest Bottom Line Contribution Percentage" for Giant stores in the region, beating out over one hundred other stores.

## I.   MIKE CONLON NAMED VICE PRESIDENT IN MR. MARLAND'S REGION

13. In or about 2008, Mr. Mike Conlon was named Vice President of Mr. Marland's region. Mr. Conlon was transferred to the region from the same position in an adjacent region. After Mr. Conlon's transfer, Mr. Marland began to be subjected to an increasingly intimidating, hostile, and abusive work environment because of his age.

14. In or about December, 2008, Mr. Conlon forced Mr. Marland to move from Store #780, where Mr. Marland had been successful, to Store #261, a store that was struggling with profitability and was preparing to undergo renovations.

15. In or about January, 2009, Mr. Marland fell and shattered his kneecap while at work. This injury caused him to miss approximately three weeks of work. Despite his injury and the store's inherited struggles, Mr. Marland was able to gradually return the store to profitability.

16. On or about September 24, 2009, Mr. Marland received a Mid-Year Appraisal Score of a [4] from Tim Baker, the District Manager. A score of [4] indicates that "Improvement is needed" in managing the store. Mr. Marland was upset to receive such a low score, given his many efforts to improve the store over the prior nine months, especially in spite of on-going renovations. This was also the first-time in his Giant career that Mr. Marland received a score this low, and Mr. Marland had no prior indication that his work was in any way deficient. As a further "insult" to Mr. Marland, Mr. Conlon remarked

to Mr. Baker that Mr. Marland "deserved a 5" meaning that Mr. Marland's management was "unsatisfactory" in his opinion.

17.  Mr. Marland was placed on Giant's "performance improvement plan" ("PIP") track for store managers.  During this "PIP" period, Giant employees must attend monthly meetings for a period of six months with upper management to discuss their alleged deficiencies and prepare a performance plan to improve upon weak areas of management. Mr. Marland only had three "informal" meetings with his District Manager, despite Giant's company-wide policy requiring six.  More importantly, the Defendants never created a performance improvement plan to address his allegedly "weak" management areas.  In spite of Mr. Marland's placement on the PIP track, store #261 was performing successfully.

## II.    JOHN WOZNIAK HIRED AS DISTRICT MANAGER

18.  In or a about June, 2010, John Wozniak was hired as the new District Manager for Mr. Marland's district.  The discrimination against Mr. Marland increased as Mr. Wozniak and Mr. Conlon worked together to artificially deflate Mr. Marland's performance scores.

19.  By way of example, during Mr. Marland's Mid-Year Evaluation on September 11, 2010, Mr. Wozniak and Mr. Conlon withheld points from his average score.  Mr. Marland proffers that he deserved a score of [2] indicating that he was performing "above expectations," but was instead issued a lower score of [3].  He was indeed performing "above expectations" since, during 2010, the store received the "Store Award for Best Produce in the Region" and the "Top Sales Award for Gift Cards."  Mr. Marland had turned Store #261 around for the better, but was not receiving any recognition from Mr. Wozniak or Mr. Conlon, who increasingly "viewed" Mr. Marland as a less than "competent" store

manager. Further, Mr. Marland's bonus, which was tied to his performance and longevity with Giant, increased every year he was with Giant.

20. During the Fall of 2011, Mr. Conlon and Mr. Wozniak's discriminatory actions against Mr. Marland became even more apparent. During their visits to the store, they would harass Mr. Marland regarding his management of the store and would force him to perform senseless tasks such as re-doing vestibule displays of products and making Mr. Marland change table cloths because they did not "like the material." When Mr. Marland complained about this treatment, Mr. Conlon told Mr. Marland that he was an outsider and that he had no allegiance to him.

21. Mr. Conlon and Mr. Wozniak also ignored Mr. Marland's repeated requests for more staff and a higher budget to address some of the problems with the store that *they* "perceived". Mr. Conlon and Mr. Wozniak continued to complain about the state of the store, but failed to provide Mr. Marland with the requested assistance. Mr. Conlon and Mr. Wozniak also refused to provide assistance for Mr. Marland in hiring necessary replacements for several employees that left the store unexpectedly for a variety of reasons during the Fall of 2011. (In point of fact, after Mr. Marland was terminated, they increased the budget and staff for the store, as Mr. Marland had requested of them prior to his termination.)

22. Mr. Marland continued to perform his job satisfactorily, including working 21 hours without compensation during a power outage in the middle of a severe weather event. Indeed, on or about September 10, 2011, Shane Sampson, the Regional President for Giant, visited the store and complimented Mr. Marland on its presentation.

## III.   FINAL EVALUATION AND TERMINATION

23.   On September 22, 2011, Mr. Marland received his final Mid-Year Evaluation. Mr. Wozniak issued him a [5] indicating that his performance was "Unsatisfactory." Mr. Marland was upset to receive such a low score yet again.   Upon closer review and calculation, however, Mr. Marland determined that he actually deserved a score of a [3] for "fully competent" management, but his Giant supervisors did not average the points correctly.   Mr. Conlon sat in on the meeting, which was unusual; he stated that Mr. Sampson, the Regional Vice President, for Giant was unaware of the meeting.

24.   Mr. Marland was shocked to receive such a score because his store earned $859,000.00 in revenue for the first 3 quarters of 2011, when in fact it was only budgeted to earn $698,000.00.

25.   As a result of this low score, Mr. Marland was again placed on a "PIP" and was required to attend six monthly performance review meetings with Mr. Wozniak.   None of these meetings ever took place.   Indeed, Mr. Marland asked Mr. Wozniak several times to meet with him to discuss his allegedly poor Mid-Year Evaluation, but Mr. Wozniak refused.

26.   Despite receiving this score, Mr. Marland continued to receive commendations from Mr. Sampson, the Regional President for Giant.   During a regional meeting in Maryland, on or about September 28, 2011, Mr. Sampson stated that he was pleased with the state of the store; Mr. Wozniak disagreed.   Thereafter, on or about October 8, 2011, Mr. Sampson visited the store and raised no complaints.

27.   On or about November 1, 2011, Mr. Marland requested an increase in payroll, and assistance to help the store prepare for inventory on or about November 16, 2011.

Mr. Wozniak ignored his request.

28. On or about Wednesday November 2, 2011, Mr. Conlon told Mr. Marland to "go home and think about [his] job until Monday." Mr. Conlon made no mention that Mr. Marland was suspended or possibly faced termination. Mr. Conlon also failed to disclose why he asked Mr. Marland to go home.

29. On or about November 9, 2011, Mr. Marland had a meeting with Mr. Conlon and Mr. Walter Missen, Giant's Human Resources Manager. Mr. Marland was informed that no job decision had been made.

30. However, on or about November 11, 2011, Mr. Conlon called Mr. Marland and terminated his employment with Giant, for alleged "performance reasons."

31. Other store managers in the Northern Virginia region received similarly low performance scores, or did not perform as well as Mr. Marland, and were not terminated. All of these store managers are substantially younger than Mr. Marland.

32. Mr. Marland was replaced by someone substantially younger than himself.

## CAUSES OF ACTION

### COUNT I
### (AGE DISCRIMINATION–29 U.S.C. §623(a))

33. The Plaintiff hereby incorporates by reference the facts set forth in paragraphs 1 through 32, and all subsequent allegations of facts, as though set forth fully and at length herein.

34. The Age Discrimination in Employment Act ("ADEA") states:

It shall be unlawful for an employer–

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate

against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or
(3) to reduce the wage rate of any employee in order to comply with this chapter. 29 U.S.C. §623(a).

35.  At the time of his termination, Mr. Marland was 59 years old, and, as such, was a member of the protected class.

36.  The Defendants are employers within the definition of the ADEA.  29 U.S.C. §630.

37.  Mr. Marland suffered an adverse employment action, due to his age, by the Defendants when he was terminated for false and pretextual reasons, and was replaced by someone substantially younger than himself.

38.  At the time of his termination, Mr. Marland was performing his job at a level which met the employers' legitimate expectations.  Mr. Marland's evaluation scores prior to his termination do not reflect his actual performance, as Mr. Conlon and Mr. Wozniak worked together to artificially deflate his scores.  Mr. Marland was exceeding his profit numbers, and the store was in the best condition possible given the Defendants' failure to provide Mr. Marland with the necessary personnel and resources.

39.  Mr. Marland proffers that the Defendants lowered his performance evaluation scores so as to terminate him because his age, experience, and seniority with Giant entitled him to a higher salary, bonus and benefits than the Defendants were prepared to pay.  Indeed, Mr. Marland's efforts at Store #261 had raised the weekly earnings of the store such that he was entitled to a significantly higher salary.  Mr. Marland raised the issue in April, 2011, and never received an adequate response.  Mr. Marland was terminated

shortly before his bonus vested, costing him more than $30,000.00 for this performance bonus.

40. The Defendants undertook the actions alleged herein in a wanton disregard for the Plaintiff's constitutional and statutory rights.

41. As a direct result and consequence of the Defendants' violation of the Plaintiff's constitutional and statutory rights, the Plaintiff has suffered monetary damages, including, but not limited to, lost wages, lost benefits, damage to his personal and professional reputation, mental distress and anguish.

WHEREFORE, the premises considered, the Plaintiff demands relief as specified hereinafter.

## COUNT II

## (HOSTILE WORK ENVIRONMENT–29 U.S.C. §623(a))

42. The Plaintiff hereby incorporates by reference the facts set forth in paragraphs 1 through 41, and all subsequent allegations of facts, as though set forth fully and at length herein.

43. To prevail on a hostile work environment claim under the ADEA, a plaintiff must prove four elements: "(1) he experienced unwelcome harassment; (2) the harassment was based on his ... age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." [1]

44. Prior to his termination, Mr. Marland was subjected to severe harassment by

_____

[1] *Baqir v. Principi*, 434 F.3d 733, 746 n. 14 (4th Cir. 2006).

Mr. Conlon and Mr. Wozniak. Mr. Conlon and Mr. Wozniak forced Mr. Marland to complete menial tasks, and berated him for non-existent "errors". The Defendants denied Mr. Marland the necessary resources to resolve these purported "errors", and created a hostile work environment which made it impossible for Mr. Marland to succeed. The Defendants gave Mr. Marland artificially low scores on his performance evaluations in an attempt to justify his termination. The Defendants discriminated against Mr. Marland because of his age and experience with the company that entitled him to a higher salary, bonus and benefits that the Defendants no longer wished to pay.

45. As a direct result and consequence of the Defendants' violation of the Plaintiff's constitutional and statutory rights, the Plaintiff has suffered monetary damages, including, but not limited to, lost wages, lost benefits, damage to his personal and professional reputation, mental distress and anguish.

WHEREFORE, the premises considered, the Plaintiff demands relief as specified hereinafter.

## RELIEF REQUESTED

WHEREFORE, the premises considered, the Plaintiff, **GARY MARLAND**, demands judgment against the Defendants, jointly and severally, granting the following relief as to all counts such that the Court:

a.    Award to Plaintiff his lost income (both back pay and front pay, at an appropriate salary) together with other employment benefits;

b.    Award to Plaintiff compensatory damages;

c.    Award to Plaintiff liquidated damages;

d.    Award to Plaintiff pre-judgment and post-judgment interest;

e.      Award to Plaintiff his reasonable attorneys' fees and costs and disbursements associated with prosecution of this action; and

f.      Such other and further relief as this Court may deem just and proper.

I, **GARY MARLAND**, do hereby solemnly declare and affirm under the penalties of perjury that the foregoing statements are true and correct to the best of my knowledge, information and belief.

GARY MARLAND

Dated: 2/6 , 2014

Respectfully submitted,

By:

Lisa Marie Riggins, Esq., Va. Bar. No. 80858
8000 Riverside Drive
Cabin John, Maryland 20818
(301) 320-4407
*Counsel for Plaintiff*

By:

David E. Schreiber, Esq.
4550 Montgomery Avenue, Suite 760N
Bethesda, Maryland 20814
(301) 951-1530
(301) 951-1599 (fax)
*Counsel for Plaintiff*

## DEMAND FOR JURY TRIAL

The Plaintiff demands a jury trial as to all counts in this action.

Lisa Marie Riggins, Esq.